1
2
3
4
5                                              THE HONORABLE RICARDO S. MARTINEZ
6
7
8
9
10
11
12
13
14
15
16
17                            UNITED STATES DISTRICT COURT
18                          WESTERN DISTRICT OF WASHINGTON
19                                       AT SEATTLE
20
21
22   CHANCE SIMS,                              No. 06-1412
23
24                 Plaintiff,                  DEFENDANT'S MOTION FOR
25                                             RECONSIDERATION
26        v.
27                                             **Note for Motion: Wednesday, July 30, 2008**
28   LAKESIDE SCHOOL,
29                                             **[CLERKS ACTION REQUIRED]**
30                 Defendant.
31

## TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................ 1

II.    ARGUMENT AND AUTHORITY ...................................................................... 1

       A.    Analysis of the Protected Opposition Activity Element of Mr. Sims's
             Retaliation Claim Rests On A Misapprehension of Fact..................................... 1

       B.    Analysis of the Adverse Action Element of Mr. Sims's Retaliation and
             Disparate Treatment Claims Is Based On a Misapprehension of Fact.................. 2

       C.    Analysis of the Pretext Element of Mr. Sims's Retaliation and Disparate
             Treatment Claims Is Based On a Misapprehension of Fact.................................. 3

DEFENDANT'S MOTION FOR
RECONSIDERATION (NO. 06-1412) – i

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32
33
34
35
36
37
38
39
40
41
42
43
44
45
46
47
48
49
50
51

# I.     INTRODUCTION

Defendant Lakeside School respectfully moves for reconsideration of the Court's decision denying its Motion for Summary Judgment on the Remaining Claims of Plaintiff Chance Sims (Dkt. #290). Based on the clarifications to the factual record outlined herein, Lakeside requests that the Court modify its findings on Mr. Sims's retaliation and disparate treatment claims. Should the possible modifications to the Court's findings impact the Court's overall decision, Lakeside asks that the Court grant Lakeside's Summary Judgment Motion.

# II.     ARGUMENT AND AUTHORITY

Lakeside recognizes that motions for reconsideration are disfavored and that the Court will ordinarily deny such a motion in the absence of a showing of manifest error in the prior ruling. CR 7(h)(1). This request for reconsideration points out with specificity, pursuant to CR 7(h)(2), several factual matters apparently overlooked or misapprehended by the Court that may demonstrate manifest error in the Court's Order Denying Defendant's Motion for Summary Judgment (the "Order") (Dkt. #319).

**A.     Analysis of the Protected Opposition Activity Element of Mr. Sims's Retaliation Claim Rests On A Misapprehension of Fact.**

Lakeside seeks review of the Court's ruling on Mr. Sims's retaliation claim with regard to what appears to be a misapprehension of a key factual premise underlying its legal conclusion that Mr. Sims's Valentine email was protected opposition activity. The Order introduces the factual situation as follows:

Here, the protected activity at issue is an email sent out by Mr. Sims to all Lakeside faculty and staff on February 14, 2006, in support of Kim Pollock ("Ms. Pollock"). Ms. Pollock was an African-American teacher *who left Lakeside earlier that year*.

Order at 6 (footnote omitted, emphasis added). The Court then reasons that Mr. Sims sent the Valentine email in support of Ms. Pollock "after her separation with Lakeside" and this separation was "due to the racial tensions between the administration and Ms. Pollock," thus sending out the Valentine email was a statutorily protected activity. *Id*. at 7-8.

DEFENDANT'S MOTION FOR
RECONSIDERATION (NO. 06-1412) – 1

36201-0006/LEGAL14483510.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

It is uncontroverted, however, that Mr. Sims sent the Valentine email **before** Ms. Pollock terminated her employment with Lakeside.  The Valentine email was sent on February 14, 2006 and Ms. Pollock executed a separation agreement on February 17, 2006—three days later. Declaration of Steven Fury ("Decl. of Fury") (Dkt. #306-4) Ex. C at pp. 47-49.

Moreover, uncontroverted evidence in the record demonstrates that Ms. Pollock chose to terminate her employment with Lakeside.  It is undisputed that in February 2006 Ms. Pollock was facing two options after she made a comment to a Caucasian student about "dealing with little white boys like [him]":  (1) return to the classroom on probationary status following an approved medical leave or (2) not return to the classroom and separate from the school.  Decl. of Fury, Ex. D at 75 (*see also* Deposition of Kimberly Pollock 239:20-25 ("Q:  Did Mr. Healy ever tell you that you had to leave Lakeside?  A:  No, he did not.  Q:  In fact, didn't he tell you that you could come back to the classroom?  A:  Yes, under probation.") attached to Second Declaration of L. Walton (Dkt. # 312) at p. 33).  Ms. Pollock chose to separate her employment.

Lakeside respectfully requests that the Court reconsider its analysis of the opposition activity element of Mr. Sims's retaliation claim based on these corrected facts.

**B.     Analysis of the Adverse Action Element of Mr. Sims's Retaliation and Disparate Treatment Claims Is Based On a Misapprehension of Fact.**

Lakeside similarly seeks to correct the record with regard to an apparent misapprehension of fact found in the Court's analysis of whether Mr. Sims's probation constituted an adverse action, which impacts both his retaliation and disparate treatment claims.  The Order reads:

> Lakeside contends that this was not an adverse employment action because Mr. Sims received no reduction in pay, and because his work assignment and schedules were not impacted by his probationary status.  However, this argument ignores the fact that Mr. Sims suffered a material change in the conditions of his employment:  *he was precluded from his ability to teach for two months*.

Order at 8 (emphasis added, citations omitted).[1]

---

[1] The Order relies upon this same analysis of Mr. Sims's retaliation claim when ruling upon the adverse action element of his disparate treatment claim.  *See* Order at 16.  Lakeside accordingly seeks reconsideration regarding both the retaliation and disparate treatment claims.

DEFENDANT'S MOTION FOR
RECONSIDERATION (NO. 06-1412) – 2

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

It is undisputed, however, that during Mr. Sims's probationary period his ability to teach his students remained the same as it had been prior to the probation. *He was not taken out of the classroom or removed of any responsibilities.* During his probation he taught the same classes with the same students on the same schedule as he had previously. No evidence suggests that Mr. Sims was "precluded from his ability to teach for two months."

The sole effect of probationary status for Mr. Sims was that his contract for the 2006-2007 school year, which would typically have been presented in March 2006, was withheld until April 2006. For Mr. Sims the impact of that consequence was minimal because it is undisputed that his Department Head Mr. Beare and the Upper School Director Mr. Healy both engaged in discussions with him in March of 2006—during his probation—regarding the classes he would be teaching the following year. *See, e.g.,* Declaration of Linda Walton (Dkt. #299-2) at pp. 82-83. And, as early as April 5, 2006 Mr. Sims announced to the entire Lakeside faculty that he had received a formal offer to teach at Lakeside School the following year. *Id.* at p150.

To the extent that the Court's conclusion that Mr. Sims suffered an adverse employment action is based on the misapprehension that he was precluded from teaching for two months in the Spring of 2006, Lakeside requests that the Court reconsider its analysis of Mr. Sims's retaliation and disparate treatment claim.

## C.     Analysis of the Pretext Element of Mr. Sims's Retaliation and Disparate Treatment Claims Is Based On a Misapprehension of Fact.

The Court ruled that Mr. Sims presented evidence sufficient to create a jury question on the issue of Lakeside's alleged retaliatory or discriminatory animus because he "offered evidence that Lakeside's proffered reasons for placing him on probation [were] both inconsistent and arguably contradictory." Order at 12, 15.[2] While respecting the Court's ruling on this point, Lakeside wishes to direct the Court to the uncontroverted objective evidence in the record

---

[2] The Order relies upon this same analysis of Mr. Sims's retaliation claim when ruling upon the pretext analysis of his disparate treatment claim. *See* Order at 18. Lakeside accordingly seeks reconsideration regarding both the retaliation and disparate treatment claims.

DEFENDANT'S MOTION FOR
RECONSIDERATION (NO. 06-1412) – 3

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

36201-0006/LEGAL14483510.1

demonstrating the consistency of Lakeside's reasoning for, and communications regarding, Mr. Sims's probation. The objective evidence demonstrates that: (1) the Valentine email was the event that prompted Mr. Sims's probation; (2) the decision to place Mr. Sims on probation was made within the context of his prior behavior; and (3) the Head of School, Mr. Noe, consistently communicated to Mr. Sims that no one had a problem with the points he raised or the messages he promoted at Lakeside, but that *it had reached the point* where his method of delivery was unacceptable.

First, it is undisputed that Lakeside administrators communicated to Mr. Sims's that his probation was prompted by his Valentine email. Ample objective evidence exists in support of this resolute fact:

- Mr. Noe's February 27, 2006 probation letter notifying Mr. Sims that he was placed on probation for "sending out [the Valentine] e-mail to 190 people essentially questioning the integrity of Upper School Director Than Healy." Order at 12-13.

- Mr. Sims's May 25, 2006 letter to Mr. Noe acknowledging that he understood from the February 17 meeting "[his] probation to be the consequence for making "untrue" and "divisive" statements in an email that I sent on February 13th [sic]." Decl. of Fury Ex. E at 100.

- Mr. Noe's June 5, 2006 letter indicating that the February probation meeting "focused on the incident that prompted your being placed on probation"—the Valentine email. Order at 13.

It is also true that Lakeside has consistently maintained its position that the probation decision was made in the context of Mr. Sims's earlier inappropriate conduct. This position is not inconsistent with nor does it contradict the fact that the Valentine prompted the probation.

Lakeside addressed each incident of Mr. Sims's unprofessional communication with colleagues when the incident occurred. Immediately after Mr. Sims sent out an email to all faculty and staff accusing his colleagues of being "closeted sexists and homophobes" Mr. Healy counseled Mr. Sims regarding the inappropriateness of that particular email. Similarly, after Mr. Sims took on a colleague in a hurtful manner during the January 3, 2006 faculty meeting Mr. Noe spoke directly with Mr. Sims and asked him to apologize for his conduct in that meet-

DEFENDANT'S MOTION FOR
RECONSIDERATION (NO. 06-1412) – 4

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

ing.[3]  Finally, after Mr. Sims sent the Valentine email, Mr. Noe, Mr. Healy and Mr. Beare sat down with Mr. Sims on February 17 to address why they found Valentine email inappropriate.

That no one specifically re-visited the "sexists and homophobes" email or Mr. Sims's conduct during the January 3rd faculty meeting, during the February 17 meeting does not constitute evidence that those incidents did not influence the decision to place Mr. Sims on probation for his then most recent divisive communication with colleagues.  Each person in the room during the February 17 meeting—including Mr. Sims—was keenly aware that this was not the first or even the second time an administrator had been forced to counsel Mr. Sims regarding unprofessional communications.  Mr. Sims admitted during his deposition that *during the February 17 meeting* Mr. Noe expressed the following sentiment:  "[a]s we all said in the meeting, Chance, no one has a problem with the points you raise or the messages you promote at Lakeside, but rather with the way in which you raise them.  It is at a point where your method of delivery is unacceptable."  Deposition of Chance Sims at 493:17-494:9[4].

Contemporaneous objective evidence also demonstrates that when the probation decision was made earlier specific incidents were clearly on the mind of Mr. Noe, whose February 27 letter references as examples of unacceptable behavior Mr. Sims's "swearing at a faculty meeting and taking on a colleague in a very personal and hurtful manner."  Decl. of Fury, Ex. E at 96.  It is undisputed that Mr. Noe wrote this letter no later than ten days after his meeting with Mr. Sims regarding the decision to place Mr. Sims on probation.  Notably, Mr. Noe's February 27 letter requests of Mr. Sims that "[i]f this is in any way unclear, please clarify it with me."  Mr. Sims did not respond.  *Id.*

---

[3] It bears noting for the sake of the record that the January 3, 2006 meeting was ***not*** "held in response to the controversial invitation of Dinesh D'Souza to speak at Lakeside."  Order at 11.  While Mr. Sims did raise the issue at the January 3rd meeting that was not the purpose of the meeting.  As described by Mr. Noe at the outset of the meeting, "We're going to talk today about people who start at Lakeside and what that experience is like and what it's like for people of color."  Declaration of Bronwyn Echols (Dkt. #204) Ex. B, pp. 5-9.

[4] Attached to Declaration of Linda Walton in Support of Lakeside's Motion for Summary Judgment on Remaining Claims of Plaintiff Chance Sims (Dkt. # 299-2) at pp. 64-65.

DEFENDANT'S MOTION FOR
RECONSIDERATION (NO. 06-1412) – 5

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

36201-0006/LEGAL14483510.1

Three months after Mr. Sims received Mr. Noe's letter of February 27, Mr. Healy requested a meeting with Mr. Sims to formalize the end of his probation. Decl. of Fury, Ex. E at pp. 104-106 (containing Mr. Healy's May 23, 2006 request for a meeting and Mr. Healy's May 25, 2006 email explaining to Mr. Sims that it is a "regular practice for someone on probation to indeed have an official follow-up meeting to review where things stand and out of that meeting a second letter is generated officially taking you off probation.") Only then did Mr. Sims object to the reference in Mr. Noe's February 27 letter to his conduct during the January faculty meeting. Decl. of Fury, Ex. E at p. 100. Shortly thereafter, on June 5, 2006, Mr. Noe agreed to take mention of the earlier incident out of the letter explaining "I did not use the February meeting to review every single incident but rather focused on the incident that prompted your being placed on probation," and acknowledging "I do understand your point that that did not leave you a chance to respond to those specific points. I will take those points out of the February letter and we will move on." *Id*. at 101.

Mr. Noe's acknowledgment that the earlier incidents were not specifically discussed in the February 17 meeting does not constitute evidence of "inconsistent or arguably contradictory" reasons for placing Mr. Sims on probation. The record is replete with uncontradicted objective evidence demonstrating that Mr. Sims's probation was prompted by the Valentine email within the context of his prior inappropriate behavior and that this fact was consistently communicated to Mr. Sims.

To the extent the Court based its conclusion that Lakeside's reasons for Mr. Sims's probation were pretextual on a misapprehension of the above facts, Lakeside requests that the Court reconsider its analysis of Mr. Sims's retaliation and disparate treatment claims.

DEFENDANT'S MOTION FOR
RECONSIDERATION (NO. 06-1412) – 6

36201-0006/LEGAL14483510.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

1
2    DATED:  July 30, 2008.                    **PERKINS COIE LLP**
3
4
5                                               By: /s/
6                                                   Linda D. Walton, WSBA No. 20604
7                                                   LWalton@perkinscoie.com
8                                                   Chelsea Dwyer Petersen, WSBA No. 33787
9                                                   CDPetersen@perkinscoie.com
10
11                                              Attorneys for Defendant
12                                              Lakeside School
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32
33
34
35
36
37
38
39
40
41
42
43
44
45
46
47
48
49
50
51

DEFENDANT'S MOTION FOR
RECONSIDERATION (NO. 06-1412) – 7

36201-0006/LEGAL14483510.1

1
2
3
4
5
6
7
8
9
10

## CERTIFICATE OF SERVICE

On July 30, 2008, I caused to be served upon counsel of record, at the address stated

below, via the method of service indicated, a true and correct copy of the following documents:

## DEFENDANT'S MOTION FOR RECONSIDERATION

| | | |
|---|---|---|
| Virginia DeCosta | ___ | Via hand delivery |
| Attorney at Law | ___ | Via U.S. Mail, 1st Class, Postage |
| DeCosta Law Firm | | Prepaid |
| The Yuncker Manor | ___ | Via Overnight Delivery |
| 519 South G Street | ___ | Via Facsimile |
| Tacoma, WA 98405 | __X__ | Via E-filing |
| Phone: (253) 761-3093 | | |
| Fax: (253) 761-3097 | | |
| | | |
| C. Steven Fury | ___ | Via hand delivery |
| Fury Bailey | ___ | Via U.S. Mail, 1st Class, Postage |
| 710 Tenth Avenue East | | Prepaid |
| Seattle, WA 98102 | ___ | Via Overnight Delivery |
| Phone: (206) 726-6600 | ___ | Via Facsimile |
| Fax: (206) 726-0288 | __X__ | Via E-filing |

I certify under penalty of perjury under the laws of the State of Washington that the

foregoing is true and correct.

DATED at Seattle, Washington, this 30th day of July, 2008.


**Perkins Coie LLP**


By  _/s/_____
Chelsea D. Petersen, WSBA #33787

DEFENDANT'S MOTION FOR
RECONSIDERATION (NO. 06-1412) – 8

36201-0006/LEGAL14483510.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000